ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

2010 JAN 14 AM 8:42

DUBLIN DIVISION

| | | |
|---|---|---|
| BRANDON KERR LAGOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-036 |
| | ) | |
| MARY ALSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison ("JSP"), in Wrightsville, Georgia, commenced the above-styled case pursuant to 42 U.S.C. § 1983. The matter is now before the Court on Defendants' Motion for Summary Judgment. (Doc. no. 25). Plaintiff opposes Defendants' Motion (doc. nos. 33, 34); Defendants filed a reply (doc. no. 35).[1] For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

I.  **STATEMENT OF FACTS**

In his amended complaint, Plaintiff argued that Defendants Alston and Powell delayed in treating Plaintiff's Hepatitis C. (See generally doc. no. 20). The Court allowed

---

[1]In a simultaneously filed Order, the Court addresses Defendants' motion requesting that discovery not be reopened. For the reasons stated in the Order, Defendants' motion is granted, discovery will not be reopened, and this motion for summary judgment is ripe for review.

Plaintiff's Eighth Amendment claim against Defendants Alston and Powell to proceed. (Doc. no. 21, pp. 4-5).

Defendant Powel is the Health Services Administrator ("HSA") at JSP. (Doc. no. 25, Ex. A, Powel Aff. ¶ 4). Her responsibilities include overseeing the administrative portion of the health care unit, as well as supervision of the medical department heads, including the medical director. (Id. ¶ 5). Defendant Alston is the Medical Director at JSP. (Doc. no. 25, Ex. B, Alston Aff. ¶ 3). Her responsibilities as Medical Director include, but are not limited to: supervising the medical staff at JSP, overseeing all inmates' medical care, approving referrals to specialists, providing medical care to inmates as scheduled, providing consultations for all professionals in the system, supervising clinical visits provided by professional staff, reviewing inmate grievances, and reviewing and approving treatment protocols, clinical policies and procedures. (Id. ¶ 5).

In June 2004, while incarcerated at Dooly State Prison, Plaintiff requested testing for Hepatitis C ("HCV") and Human Immunodeficiency Virus ("HIV"). (Doc. no. 25, Powel Aff. ¶ 8). He was tested on June 22, 2004, for Hepatitis B and HCV, as well as HIV; his results were negative. (Doc. no. 25, Ex. A-1, p. 108[2]). Then, on April 2, 2007, Plaintiff requested retesting for Hepatitis A, B, and HCV, as well as HIV. (Doc. no. 25, Powel Aff. ¶ 10 and Ex. A-1, p. 164). Plaintiff was tested for HCV on April 3, 2007. (Doc. no. 25, Powel Aff. ¶ 11 and Ex. A-1, p. 104). The test results reported on April 6, 2007, indicated Plaintiff was positive for HCV. (Doc. no. 25, Powel Aff. ¶ 11 and Ex. A-1, p. 104).

---

[2]Exhibit A-1 contains excerpts from Plaintiff's medical record. The page numbering corresponds to the page number in Plaintiff's medical record.

Over four months later, on August 14, 2007, Plaintiff was seen by Defendant Alston for the first time, "for a routine medical visit." (Doc. no. 25, Alston Aff. ¶ 12 and Ex. A-1, p. 150). Based on this visit, Defendant Alston ordered lab tests to assess Plaintiff's candidacy for antiviral treatment. (Doc. no. 25, Alston Aff. ¶ 14 and Ex. A-1, p. 150). HCV treatment protocol provides that if an inmate meets the pre-requisites outlined in the protocol, a liver biopsy is then required because candidacy for HCV treatment is based on the biopsy results. (Doc. no. 25, Powel Aff. ¶ 21, Ex. A-2, Alston Aff. ¶ 11).

On August 17, 2007, Plaintiff received the lab tests pursuant to HCV treatment protocol. (Doc. no. 25, Alston Aff. ¶ 15, Ex. A-1, p. 17, Ex. A-2). The record is unclear as to when Defendant Alston received the lab results. However, it appears that she did not request the consult with Dr. Chaudhary until November 3, 2007. (Doc. no. 25, Alston Aff. ¶¶ 16, 17 and Ex. A-1, p. 83). Dr. Chaudhary is an independent consultant in the area of gastroenterology and hepatology.[3] (Doc. no. 25, Chaudhary Aff. ¶ 3).

The consult was approved one month later and was scheduled for February 28, 2008. (Doc. no. 25, Ex. A-1, pp. 83, 84). Plaintiff had his consult with Dr. Chaudhary on February 28th via a Tele-med appointment. (Id.). Dr. Chaudhary determined that Plaintiff's genotype, Genotype 1, qualified him to have a liver biopsy, which is required to determine candidacy for HCV antiviral treatment. (Doc. no. 25, Ex. A-1, p. 81 and Ex. A-2). Based on Dr. Chaudhary's recommendation, Defendant Alston, on February 28, 2008, requested a consult for Plaintiff to receive a liver biopsy. (Doc. no. 25, Alston Aff. ¶ 20 and Ex. A-1, pp. 91-92).

---

[3]As a consultant, Dr. Chaudhary's responsibilities include, but are not limited to, running an HCV clinic, performing diagnostic endoscopic procedures, and performing liver biopsies and colonoscopies. (Doc. no. 25, Chaudhary Aff. ¶ 44).

3

Defendant Alston's request was authorized on April 9, 2008; Plaintiff's liver biopsy was scheduled for, and was performed on, September 18, 2008. (Doc. no. 25, Powel Aff. ¶ 17 and Ex. A-1, pp. 48, 55). On September 23, 2008, Defendant Alston requested a consult to follow-up on the results of Plaintiff's biopsy. (Doc. no. 25, Alston Aff. ¶ 23 and Ex. A-1, pp. 211, 212). That consult request was approved on the following day, and was scheduled for October 22, 2008. (Id. Alston Aff. ¶ 23). The Tele-med consult with Dr. Chaudhary was held on October 22nd, and based on Dr. Chaudhary's recommendation, Plaintiff began his antiviral treatment on November 3, 2008. (Doc. no. 25, Alston Aff. ¶¶ 24, 25 and Ex. A-1, pp. 211, 212, 207).

According to Defendants, neither Defendant Powel nor Defendant Alston have the authority or expertise to prescribe antiviral treatment for HCV. (Doc. no. 25, Powel Aff. ¶ 21 and Alston Aff. ¶ 41). Defendants do however, offer the expert opinion of Dr. Chaudhary who opines that it takes decades for HCV to cause damage to the liver and that only 10% of patients with HCV develop advanced liver damage over the period of 20 years. (Doc. no. 25, Chaudhary Aff. ¶ 19). Dr. Chaudhary further opines that the delay Plaintiff had in receiving his antiviral treatment from August 14, 2007, to November 3, 2008, had no detrimental effect on Plaintiff's health. (Id. ¶ 20). Finally, Dr. Chaudhary notes that the testing and consults that occurred in the intervening months between Plaintiff's request and the start of the antiviral treatment were necessary to properly evaluate his candidacy for antiviral treatment and to ensure that he received the proper treatment at the proper stage of his infection. (Id. ¶ 22).

4

On the other hand, Plaintiff maintains Defendants are not entitled to summary judgment because they delayed in treating his HCV and as a result, his liver was damaged. More specifically, Plaintiff maintains that when he was admitted into the JSP Hepatitis C clinic on May 15, 2007, his viral load was 463,000. (Doc. no. 33, p. 11; doc. no. 34, Ex. 10; doc. no. 25, Ex. A-1, p. 83). According to Plaintiff, this level is higher than desired, and at that point, he met the criteria for a specialized consult. (Doc. no. 33, p. 11). Furthermore, Plaintiff notes that at the time he received his liver biopsy in September 2008, his viral load was 3,860,000. (Id.; doc. no. 34, Ex. 10-A, 10-b, 10-c). Additionally, Plaintiff states that his liver had developed necrosis, fibrosis, and inflamation. (Id. at 21).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

---

[4]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

5

with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## C. Merits Of Plaintiff's Claim

Bearing the standard for summary judgment in mind, Defendants' motion for summary judgment should be granted. To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted).

To show that Defendants were deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

Plaintiff argues that Defendants were deliberately indifferent to his serious medical need in delaying treatment for his HCV. (Doc. no. 33). Plaintiff complains that Defendants

7

delayed in treating his HCV for approximately eighteen (18) months. (Doc. no. 33). Additionally, Plaintiff asserts that as a result of the delayed treatment, his viral load was elevated, and his liver had deteriorated to the point of having fibrosis, necrosis and inflamation. (Id. at 11). Defendants admit that Plaintiff's HCV is a serious medical need. (Doc. no. 25, p. 10). However, they maintain that the stage of Plaintiff's HCV was not objectively serious, and that the delay in receiving antiviral treatment form Plaintiff's initial encounter with Defendant Alston, to the date he began treatment, had no detrimental effect on his health. (Id.). In fact, Defendants assert that the delay "was vital to properly determine Plaintiff's candidacy." (Id.).

Here, there is no question that HCV is an objectively serious medical need. However, although the record reflects that from the time that Plaintiff tested positive for HCV, April 6, 2007, until his treatment began, November 3, 2008, over 18 months had elapsed, the record also reflects that this delay was not detrimental to Plaintiff's health. Concerning the alleged delay, the record shows that from the time Plaintiff's lab tests reflected that he had tested positive for HCV, until the time he was seen by Defendant Alston for a "routine visit," over four months had elapsed. Then the record reflects that from the time Plaintiff underwent the lab tests pursuant to HCV treatment protocol, August 17, 2007, until a consult request was made, over two months had elapsed. In fact, from the time Plaintiff under went the lab tests on August 17, 2007, until he had a consult with Dr. Chaudhary on February 28,

2008, over six months had elapsed.[5] On February 28, pursuant to Dr. Chaudhary's recommendation, Defendant Alston requested a consult for Plaintiff's liver biopsy procedure; the request was approved on April 9, 2008. However, Plaintiff then had to wait another five months until his procedure. Once Plaintiff had his liver biopsy on September 18, 2008, his medical treatment from that point on progressed quickly. Indeed, five days after his procedure, Defendant Alston requested a consult with Dr. Chaudhary to discuss the results of Plaintiff's liver biopsy; the consult occurred on October 22, 2008; and Plaintiff's HCV treatment began on November 3, 2008. Thus, 18 months did pass from the time Plaintiff tested positive for HCV until he began his HCV treatment. Nonetheless, during those 18 months, Plaintiff was undergoing lab tests necessary for determining the appropriateness of antiviral treatment.

Defendants assert that despite this delay, Plaintiff fails to satisfy either the objective or subjective components of his claim for deliberate indifference. (Doc. no. 25, p. 10). More specifically, Defendants maintain that Plaintiff's stage of the disease was not objectively serious; and that the delay "had no detrimental effect on his health and was vital to properly determine Plaintiff's candidacy." (Id.). Defendants note that "it takes decades for HCV to cause damage to the liver; only 10% of patients with HCV develop advanced liver damage over the period of 20 years." (Id.). Defendants also note that "the testing and consultations occurring in the intervening months were *necessary* to properly evaluate Plaintiff for

---

[5]The Court recognizes that Defendant Alston requested the consult on November 3, 2007; that request was granted in December 2007.

treatment because treatment of Plaintiff at too early a date could have been detrimental to its effectiveness." (Id. at 10-11). Finally, Defendants argue that Plaintiff has provided no evidence that the delay in antiviral treatment has produced a detrimental effect on his condition. (Id. at 10-11).

The Court recognizes that the testing and consultations that occurred in the intervening months were necessary to properly evaluate Plaintiff for treatment because treatment of Plaintiff at too early a date could have been detrimental to its effectiveness. (Doc. no. 25, pp. 10-11). As Dr. Chaudhary explains, genotype and biopsy results are the main clinical determinants of the decision to start antiviral therapy. (Doc. no. 25, Chaudhary Aff. ¶ 11). Additionally, the Screening, Evaluating, and Treatment of Hepatitis C Memo provides:

> For the past 6 years, hepatitis C therapies have doubled in efficacy every three years. Because the disease progression is generally slow and of the order of decades for simple infection with HCV, it may be prudent to wait before treating patients with the milder stags of fibrosis. . . . As new therapies emerge, these patients can be considered for improved treatments that may have a much higher chance of success.

(Doc. no. 25, Ex. A-2, p. 10). Furthermore, Dr. Chaudhary states that once a patient receives antiviral treatment, re-treatment is rarely, if ever successful. (Id. ¶ 12). Therefore, patients who do not qualify for the antiviral treatment are continually monitored in a Chronic Illness Clinic. (Id. ¶ 13).

Defendants contend that Plaintiff's stage of the disease was not objectively serious because "Plaintiff's condition was not 'diagnosed by a physician as mandating treatment or

10

[is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (Id.). As noted above, the testing and consultations that occurred in the intervening months were necessary to properly evaluate Plaintiff for treatment because treatment of Plaintiff at too early a date could have been detrimental to its effectiveness.

In any event, Plaintiff cannot show that the delay in his treatment was detrimental to his health. "An inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002). "Whether [a] delay in treatment was tolerable depends on the nature of the medical need and the reason for the delay." Farrow v. West, 320 F.3d 1235, 1247 (11th Cir.2003) (internal quotation omitted).

Defendants state "there is no evidence to support Plaintiff's allegation that the delay in antiviral treatment was anything other than for his benefit, as evidenced by protocol and Plaintiff's medical record." (Doc. no. 25, p. 16). Additionally, Defendants provide that the delay in Plaintiff's medical care had "absolutely no detrimental effect on his health condition." (Id.). Defendant's rely on Dr. Chaudhary's statement, "It takes decades for Hepatitis C to cause damage to the liver. Only 10% of patients with Hepatitis C will develop advanced liver damage over the next 20 years." (Id. Chaudhary Aff. ¶ 19). Additionally, they rely on his statement that "the delay in the dates from his request for treatment . . . to the date he began receiving antiviral treatment . . . had not detrimental effect on his health." (Id. ¶ 20).

11

On the other hand, Plaintiff maintains that when he was admitted into the JSP Hepatitis C clinic on May 15, 2007, his viral load was 463,000. (Doc. no. 33, p. 11; doc. no. 34, Ex. 10; doc. no. 25, Ex. A-1, p. 83). According to Plaintiff, this level is higher than desired, and at that point, he met the criteria for a specialized consult. (Doc. no. 33, p. 11). Furthermore, Plaintiff notes that at the time he received his liver biopsy, his viral load was 3,860,000. (Id.; doc. no. 34, Ex. 10-A, 10-b, 10-c). Additionally, Plaintiff states that his liver had developed necrosis, fibrosis, and inflamation. (Id. at 21).

Notably, the liver biopsy report provides:

> Mild chronic hepatitis, consistent with hepatitis C, with portal fibrosis.
> Focal trace iron deposit in hepatocytes.
>
> Scheurer grading system:
> Portal/periportal activity: 1 of 4 (minimal piece-meal necrosis).
> Lobular activity: 2 of 4 (mild lobular inflamation).
> Stage: 1 of 4 (portal fibrosis).

(Doc. no. 25, Ex. A-1, p. 55). Additionally, the medical records concerning the October 22, 2008 consult indicate that Plaintiff was diagnosed with grade 2 stage 2 HCV. (Id. at 208). Here, although Plaintiff characterizes his viral load level as higher than desirable, and that his liver had developed necrosis, fibrosis, and inflamation, the Clinical Update Manual for Screening, Evaluation and Treatment of Hepatitis C provides in pertinent part:

> Because the disease progression is generally slow and of the order of decades for simple infection with HCV, it may be prudent to wait before treating patients with the milder states of fibrosis. In general, patients with no to mild fibrosis should be observed in Chronic Care Clinic, monitored with LFTs, and re-evaluated in 3 to 5 years with another biopsy.

(Doc. no. 25, Ex. A-2, p. 10). Indeed, in a case with similar facts as the case *sub judice*, a prisoner plaintiff failed to show deliberate indifference by the defendants when the plaintiff,

12

whose liver biopsy results showed that the plaintiff had chronic hepatitis C exhibiting mild activity, was denied anti-viral treatment and was directed to have another biopsy in three to five years. Abel v. Lappin, – F. Supp. 2d –, CV 207-088, 2009 WL 3055275, at *10 (S.D. Ga. Sept. 24, 2009).

Concerning Plaintiff's argument that his HCV RNA levels were elevated and therefore established injury, according to Defendants' response to Plaintiff's requests for admissions:

> [P]atients with chronic Hepatitis C have levels of HCV RNA viral load between 100,000 and 10,000,000 copies per mL; less than 2,000,000 copies, however, is considered low level of HCV RNA. Defendants further admit that, as outlined in [the] Hepatitis C protocol, viral levels are measured by HCV RNA do not correlate with the severity of the hepatitis or with a poor prognosis. Rather, viral load correlates with the likelihood of a response to antiviral treatment.

(Doc. no. 34, Ex. 19, ¶ 9).

Therefore, Plaintiff has not shown that the delay had any detrimental effect on his health. Indeed, Dr. Chaudhary specifically stated "the delay in the dates from his request for treatment . . . had no detrimental effect on his health" (Chaudhary Aff. ¶ 20), and Plaintiff has not produced any verifiable evidence to counter that statement. Therefore, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim for medical deliberate indifference concerning the delay in treatment.[6]

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that

---

[6] The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

13

Defendants' motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that an appropriate final judgment be **ENTERED** in favor of Defendants.

SO REPORTED and RECOMMENDED this 14th day of January, 2010, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE